UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| GARY EUGENE BUNCHE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 16-311-DCR |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA. | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Federal inmate Gary Eugene Bunche is confined at the Federal Medical Center in Lexington, Kentucky.  Bunche filed this action pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80 ("FTCA"), alleging that healthcare staff at the prison failed to provide him with adequate medical care.  [Record No. 1]  The United States has moved to dismiss his First Amended Complaint or, in the alternative, for summary judgment.  [Record No. 25]  The matter has been fully briefed and is ripe for decision.

**I.**

Since his federal incarceration began in 2008, Bunche has suffered from a variety of chronic medical conditions, including recurrent cellulitis.[1]  [Record No. 25-

---

[1]  Cellulitis is a bacterial infection of the inner skin, which typically involves redness at the infected area, as well as swelling and perhaps tenderness.  *See* https://en.wikipedia.org/wiki/Cellulitis (last visited on June 20, 2017).

1 at 3 n.4] In April 2013, following an examination for swelling in his left foot, Bunche was again diagnosed with cellulitis and an antibiotic prescription (Doxycyline) was issued. During a follow-up examination one month later, a CT scan was ordered to rule out pelvic inflammation. [Record Nos. 25-10 at 2; 25-12 at 1-2, 5-7]

On July 10, 2013, at approximately 8:40 p.m., Bunche began to experience symptoms from his cellulitis. He did not immediately seek treatment, believing that staff would not address the matter until his symptoms were externally observable. [Record No. 1-4 at 14] However, at 10:30 p.m., Bunche went to the officer's station in his unit and advised Officer Hogan that he needed emergency medical treatment for sepsis[2] in his left leg. Hogan telephoned an on-duty nurse and conveyed Bunche's self-reported symptoms. In response to the nurse's inquiry, Bunche stated that the symptoms were a recurring condition because he was suffering from cellulitis, a fact documented in his medical records. The nurse directed Bunche to go to the sick call the next morning. *Id*. Bunche asserts that prison staff failed to record his request for immediate medical treatment in their activity logs. He further contends that he was only able to return to his cell with the assistance of other inmates. [Record No. 8 at 3-4]

_____

[2] Sepsis is a condition where the body's response to an infection results in injury to its own tissues and organs. Bunche refers to this condition as septicemia in his Complaint; in common usage, the two terms are interchangeable. https://en.wikipedia.org/wiki/Sepsis (last visited on June 20, 2017); The Merck Manual Ch. 58 at 566-69 (18th ed. 2008).

At 8:40 a.m. the next morning, Bunche reported to his prison job and worked until 9:30 a.m. when he left to report to sick call. [Record Nos. 25-2 at 3; No. 25-6 at 1] Once there, he told healthcare staff that he had vomited overnight and was experiencing nausea, headache, and pain in his left foot. Staff concluded that he should be sent to the emergency room at the University of Kentucky Medical Center ("UKMC") to rule out sepsis. [Record Nos. 25-10 at 3; 25-12 at 8]

Following his arrival at UKMC, a MRI and other tests were performed. The tests established that Bunche was not suffering from sepsis and confirmed his diagnosis with cellulitis in his lower left leg.[3] [Record No. 25-12 at 10-12] A ten-day course of clindamycin was prescribed. Bunche was discharged to return to the prison on July 14, 2013. [Record No. 8 at 4; No. 1-4 at 25-28]

By July 15, Bunche reported that his condition was much improved and that he wished to return to work at his prison job. [Record Nos. 25-10 at 4; 25-12 at 28] During a July 30 follow-up appointment, it was determined that Bunche had failed to complete the 10-day course of antibiotics. [Record Nos. 25-10 at 4; 25-13 at 7-8]

On June 22, 2015, Bunche filed a Standard Form 95 with the Bureau of Prisons, seeking $45 million in administrative settlement of his claims arising from the above-

---

[3]  Blood tests conducted by UKMC initially suggested that Bunche might suffer from acute kidney disease, but this was an error caused by a misinterpretation of his blood tests. That preliminary assessment was later abandoned based upon further review of the test results, as well as more recent testing showing normal kidney function. [Record Nos. 25-1 at 4 n.11; 25-10 at 3, 13; 25-12 at 13-18; 25-15 at 29-35; 25-16 at 1-15]

described events. [Record No. 25-5]  The BOP denied his claim on August 26, 2015, concluding that his medical care was appropriate because his symptoms did not indicate the need for emergency treatment. [Record Nos. 1-5 at 1-3; 25-4]  Bunche sought reconsideration of the BOP's denial, but the BOP denied that request on February 18, 2016. [Record No. 1-7]

Bunche filed suit on August 17, 2016.  Bunche contends that as a result of the 10-hour delay in treatment, he suffered anxiety, excruciating pain, and kidney damage, which he characterizes as a breach of "ministerial, fiduciary, statutory, regulatory, and procedural duties."  He further asserts that all of these duties, the source of which he does not identify, were also violated by the failure of the nurse and the officer to make a record of the initial 10:30 p.m. encounter.  [Record No. 8 at 4-6]

The United States argues that Bunche has failed to support his claim regarding the adequacy and timeliness of the medical care he received with expert testimony as required by law, and that his claims are not of the kind which fall within the "common knowledge" or other exceptions to that requirement.  [Record No. 25-1 at 12-16] With respect to Bunche's "property" claim arising out of the failure of BOP staff to record his request for medical care on the evening of July 10, 2013 into its log books, Bunche has not demonstrated that any such duty existed, or that the failure to log his request was the cause of any injury. [Record No. 25-1 at 19-25]

## II.

The Court treats the government's motion to dismiss as a motion for summary judgment because it has attached and relied upon documents and declarations extrinsic to the pleadings.  Fed. R. Civ. P. 12(d); *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F. 3d 1102, 1104 (6th Cir. 2010).  A motion under Rule 56 challenges the viability of another party's claim by asserting that at least one essential element of that claim is not supported by legally-sufficient evidence.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).  A party moving for summary judgment must establish that, even viewing the record in the light most favorable to the nonmovant, there is no genuine dispute as to any material fact and that it is entitled to a judgment as a matter of law.  *Loyd v. St. Joseph Mercy Oakland*, 766 F. 3d 580, 588 (6th Cir. 2014).

A moving party does not need her own evidence to support this assertion, but needs only point to the absence of evidence to support the claim.  *Turner v. City of Taylor*, 412 F. 3d 629, 638 (6th Cir. 2005).  The responding party cannot rely upon allegations in the pleadings, but must point to evidence of record in affidavits, depositions, and written discovery which demonstrates that a factual question remain for trial.  *Hunley v. DuPont Auto*, 341 F. 3d 491, 496 (6th Cir. 2003); *United States v. WRW Corp.*, 986 F. 2d 138, 143 (6th Cir. 1993) ("A trial court is not required to speculate on which portion of the record the non-moving party relies, nor is there an obligation to 'wade through' the record for specific facts.").

The Court reviews all of the evidence presented by the parties in a light most favorable to the responding party, with the benefit of any reasonable factual inferences which can be drawn in his favor. *Harbin-Bey v. Rutter*, 420 F. 3d 571, 575 (6th Cir. 2005). However, if the responding party's allegations are so clearly contradicted by the record that no reasonable jury could adopt them, the court need not accept them when determining whether summary judgment is warranted. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The Court must grant summary judgment if the evidence would not support a jury verdict for the responding party with respect to at least one essential element of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). If the applicable substantive law requires the responding party to meet a higher burden of proof, the evidence must be sufficient to sustain a jury's verdict in his favor in light of that heightened burden of proof at trial. *Harvey v. Hollenback*, 113 F. 3d 639, 642 (6th Cir. 1997); *Moore, Owen, Thomas & Co. v. Coffey*, 992 F. 2d 1439, 1444 (6th Cir. 1993).

The FTCA, provides for a limited waiver of the sovereign immunity enjoyed by the United States for claims based upon "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant." 28 U.S.C. § 1346(b); *Matthews v. Robinson*, 52 F. App'x 808 (6th Cir. 2002). The law of the state where the

relevant conduct occurred determines the existence and scope of its liability. *Rayonier Inc. v. United States*, 352 U.S. 315, 318 (1957).

Bunche contends that the medical care he received from health care professionals in the employ of the United States fell below the applicable standard of care. Specifically, he alleges that when he requested emergency treatment for sepsis on the evening of July 10, 2013, BOP staff failed to provide it, and instead only told him to report to sick call the next morning. Bunche contends that delay caused him to suffer anxiety and pain and caused injury to his kidney. [Record No. 8 at 4-6]

Because Bunche alleges that the medical care he received at the prison fell below the applicable standard of care, the Court looks to Kentucky's law of negligence to determine whether he has presented the essential elements of his claim. *Id.* Under Kentucky law, to establish a *prima facie* case of medical malpractice a plaintiff must prove that the given treatment fell below the degree of care and skill expected of a reasonably competent practitioner and that the negligence proximately caused the plaintiff's injury or death. *Reams v. Stutler*, 642 S.W.2d 586, 588 (Ky. 1982).

Negligence is never presumed "from the mere evidence of mental pain and suffering of the patient, or from failure to cure, or poor or bad results, or because of the appearance of infection." *Andrew v. Begley*, 203 S.W.3d 165, 170 (Ky. App. 2006). Instead, "[t]o survive a motion for summary judgment in a medical malpractice case in which a medical expert is required, the plaintiff must produce expert evidence or summary judgment is proper." *Id.* (*citing Turner v. Reynolds*, 559 S.W.2d 740, 741-42

(Ky. App. 1977)); *Blankenship v. Collier*, 302 S.W.3d 665, 675 (Ky. 2012) ("[A] plaintiff bringing a typical medical malpractice case is required by law to put forth expert testimony to inform the jury of the applicable medical standard of care, any breach of that standard and the resulting injury."). The plaintiff can provide evidence of the applicable standard of care from a variety of sources. For instance, "the necessary expert testimony may be supplied by the defendant's admissions during discovery, or through medical evidence obtained from other treating physicians." *Vance By and Through Hammons v. United States*, 90 F.3d 1145, 1148 (6th Cir. 1996) (*citing Perkins v. Hausladen*, 828 S.W.2d 652, 655-56 (Ky. 1992)).

Bunche has not provided any expert testimony to support his claim that the medical care given by the defendants fell below the applicable standard of care and caused his injuries. Therefore, he has failed to establish a *prima facie* case of medical negligence. *Matthews*, 52 F. App'x at 810; *Andrew*, 203 S.W.3d at 170; *see also Baylis v. Lourdes Hosp., Inc.*, 805 S.W.2d 122, 124 (Ky. 1991) ("It is an accepted principle that in most medical negligence cases, proof of causation requires the testimony of an expert witness because the nature of the inquiry is such that jurors are not competent to draw their own conclusions from the evidence without the aid of such expert testimony."). As a result, the defendant is entitled to judgment in its favor unless Bunche can establish an exception to this rule.

Bunche asserts in his response that his case warrants application of Kentucky's "common knowledge" exception. [Record No. 37-1 at 2-3] The exception obviates

the need for expert testimony to establish the standard of care, but only "where the common knowledge or experience of laymen is extensive enough to recognize or to infer negligence from the facts." The exception is very narrow, and is generally limited to circumstances involving obvious error by the physician, such as where a surgeon amputates the wrong limb or leaves a foreign object in the body. *Rose v. United States*, No. 09-104-ART, 2011 WL 839548, at *2 (E. D. Ky. Mar. 7, 2011) (citing *Andrew*, 203 S. W. 3d at 170). Neither the nature of Bunche's medical conditions (including cellulitis, sepsis, or kidney function) nor the proper treatment for them are of this kind. Thus, the common knowledge of a layman is not sufficient to make a reasoned determination regarding the propriety of the BOP's treatment of them without the assistance of opinion testimony provided by a medically-qualified expert. In short, the common knowledge exception is inapplicable to Bunche's claims. *Blankenship*, 302 S.W.3d at 670-71.

Bunche makes a second argument seeking to avoid application of this rule. He appears to argue that because he was not provided medical treatment the evening of his complaint, his claim does not involve medical malpractice because it did not involve the exercise of medical judgment. Instead, he asserts that he is making claims based upon the actions of BOP staff that he characterizes variously as ministerial, professional, or official. [Record No. 32-1 at 3-4] This argument is not persuasive. While Bunche asserts that his symptoms unquestionably presented a medical emergency, and thus the response by staff was merely "official" or "ministerial" in

nature, this argument ignores the fact that determining whether the physical symptoms over the phone to the nurse constituted an emergency necessarily requiring the nurse to call upon medical training and experience to assess whether immediate medical treatment was required. Bunche's claim (i.e., that the delay in providing medical treatment was inconsistent with the duty of care given the symptoms presented) is an ordinary claim of medical malpractice requiring expert testimony to support it. Cf. *Burns v. United States*, 542 F. App'x 461, 467 (6th Cir. 2013).

Finally, having failed to provide expert testimony on his own, Bunche invokes Federal Rule of Civil Procedure 56(d) to request that the Court delay consideration of the motion so that he can engage in discovery in an effort to find some support for his allegation of medical negligence. [Record No. 37-1 at 9] But Bunche fails to explain how discovery will provide him with an expert opinion to support his claim: evidence that is *his* obligation to provide. *Hernandez v. United States*, No. 08-CV-195-KSF, 2009 WL 1586809, at *6 (E.D. Ky. June 5, 2009) ("It is the Plaintiff's burden to find a doctor who will testify to the standard of treatment of each condition and testify that in his or her expert opinion, the standard was breached by the federal employee(s) in this case."). Therefore, his request will be denied.

In summary, Bunche has not provided expert testimony to support his claim that the medical care given by the defendant fell below the applicable standard of care and caused his injuries. As a result, he has failed to establish a *prima facie* case of

medical negligence.  *Andrew*, 203 S.W.3d at 170; *see also Baylis v. Lourdes Hosp., Inc.*, 805 S.W.2d 122, 124 (Ky. 1991) ("It is an accepted principle that in most medical negligence cases, proof of causation requires the testimony of an expert witness because the nature of the inquiry is such that jurors are not competent to draw their own conclusions from the evidence without the aid of such expert testimony.").

Bunche's complaint also asserts a distinct claim against the United States based upon the failure of Officer Hogan and the after-hours nurse to properly log or document his late evening request for emergency medical care.  He does not identify the legal basis for the claim except to assert that the officers "refused or failed to follow a prescribed course of action; and breached its ministerial, fiduciary, statutory, regulatory, and procedural duties."  [Record No. 8 at 4-6]  The United States argues that no such duty existed under the circumstances and that the failure to log the encounter did not cause injury to Bunche.  The United States is correct regarding both assertions.

Bunche fails to identify any source of law that required the federal officers to document his request for medical care on the evening in question.  He refers to 18 U.S.C. § 4042, which states in broad and general terms that the BOP is required to provide for the safekeeping and care of prisoners in its charge.  But that generalized duty of care imposed upon the BOP in its handling of inmate affairs does not make that duty nondiscretionary, as the implementation of the statute's broad obligation necessarily involves elements of judgment and choice, and the statute does not by its

terms remove such discretion from the BOP.  See *Ochran v. United States*, 117 F.3d 495 (11th Cir. 1997); *Calderon v. United States*, 123 F.3d 947, 950 (7th Cir. 1997) ("While it is true that this statute sets forth a mandatory duty of care, it does not, however, direct the manner by which the BOP must fulfill this duty.").  Courts have consistently held that, "[a]s a general rule, domestic liability on the part of the federal government under the Federal Tort Claims Act is determined in accordance with the law of the state where the event giving rise to liability occurred."  *Young v. United States*, 71 F.3d 1238, 1242 (6th Cir. 1995) (citing 28 U.S.C. §§ 1346(b), 2674); *Friedman v. United States*, 927 F.2d 259, 261 (6th Cir. 1991); *Arbour v. Jenkins*, 903 F.2d 416, 422 (6th Cir. 1990).  Because Bunche fails to point to any source of law that created a duty to create a record under the specific circumstances here at issue, his claim fails upon its own terms.[4]

For the reasons set forth above, the Court will dismiss Bunche's claims relating both to the provision of medical care and to the failure to log his request for such care on July 10, 2013.  Accordingly, it is hereby

**ORDERED** as follows:

---

[4]  The BOP also notes that its internal policy documents and manuals, including Program Statements 5500.14, 6031.04 and LEX 6031.01, did not direct or require staff to log the request for medical care (made after-hours and by telephone) where no emergency was found to exist, no physical examination was made, and no treatment was given.  [Record Nos. 25-1 at 20-24; 25-10 at 14-15]   The BOP's Program Statements are not regulations promulgated in conformity with the Administrative Procedures Act, 5 U.S.C. § 500 et seq., and do not have the force of law.  They would not establish an enforceable duty as a basis for a claim under the FTCA.

1.	The United States' motion for summary judgment [Record No. 25] is **GRANTED**.

2.	Gary Eugene Bunche's First Amended Complaint [Record No. 8] is **DISMISSED**, with prejudice.

3.	Judgment in favor of the defendant will be entered this date.

4.	This matter is **DISMISSED** and **STRICKEN** from the docket.

This 10th day of July, 2017.

Signed By:

*Danny C. Reeves* DCR

United States District Judge